IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

IN RE:   ETHICON, INC.,
        PELVIC REPAIR SYSTEM
        PRODUCTS LIABILITY LITIGATION    MDL No. 2327

---

THIS DOCUMENT RELATES TO THE FOLLOWING CASE:

*Amsden v. Ethicon Inc. et al.*    No. 2:12-cv-00960

MEMORANDUM OPINION AND ORDER
(Defendants' Motion for Summary Judgment Based on Statute of Limitations)

Pending before the court is the Motion for Summary Judgment [ECF No. 65] filed by Ethicon Inc. and Johnson & Johnson (collectively "Ethicon") and focused on whether the plaintiffs' case is barred by the applicable statute of limitations. The plaintiff filed her Response [ECF No. 68], and the defendants filed their Reply [ECF No. 73]. Thus, this matter is ripe for my review, and the Motion is **DENIED**.

I.

This case resides in one of seven MDLs assigned to me by the Judicial Panel on Multidistrict Litigation concerning the use of transvaginal surgical mesh to treat pelvic organ prolapse and stress urinary incontinence. In the seven MDLs, there are more than 75,000 cases currently pending, approximately 30,000 of which are in the Ethicon MDL, MDL 2327. In an effort to efficiently and effectively manage this massive MDL, I decided to conduct pretrial discovery and motions practice on an individualized basis so that once a case is ready for trial (i.e., after the court has ruled

on all *Daubert* motions, summary judgment motions, and motions in limine, among other things), it can then be promptly transferred or remanded to the appropriate district for trial. To this end, I ordered the parties to submit a joint list of the 200 oldest cases in the MDL, which would then become part of a "wave" of cases to be prepared for trial and, if necessary, remanded. The parties selected Ms. Amsden's case for inclusion in Ethicon's Wave 1. Pretrial Order No. 196.

On October 11, 2005, Ms. Amsden was implanted with Ethicon's Gynecare Prolift and Gynecare Gynemesh (collectively "mesh products") by Dr. Michael England. Ms. Amsden alleges she was injured by the mesh products. She now brings the following claims against Ethicon: negligence; strict liability for design defect, manufacturing defect, and failure to warn; common law and constructive fraud; breach of express and implied warranties; fraudulent concealment; and discovery rule and tolling.

Ethicon argues that all of these claims are barred by Texas's statute of limitations. Consequently, Ethicon asserts, the court should grant summary judgment in favor of Ethicon.

## II.

The court is authorized to rule on pretrial motions in MDL cases. 28 U.S.C. § 1407. The choice of law for these pretrial motions depends on whether they concern federal or state law:

> When analyzing questions of federal law, the transferee court should apply the law of the circuit in which it is located. When considering questions of state law, however, the transferee court must apply the state law that would have applied to the individual cases had they not

2

been transferred for consolidation.

*In re Temporomandibular Joint (TMJ) Implants Prods. Liab. Litig.*, 97 F.3d 1050, 1055 (8th Cir.1996) (citations omitted). To determine the applicable state law for a dispositive motion based on the statute of limitations, I generally refer to the choice-of-law rules of the jurisdiction where the plaintiff first filed her claim. *In re Digitek Prods. Liab. Litig.*, MDL No. 2:08-md-01968, 2010 WL 2102330, at *7 (S.D. W. Va. May 25, 2010). Because the plaintiff first filed in the United States District Court for the Northern District of Texas, the choice-of-law principles of Texas guide this court's choice-of-law analysis.

In tort actions, Texas uses the "most significant relationship" test to determine choice-of-law issues. *Hughes Woods Prods., Inc. v. Wagner*, 18 S.W.3d 202, 205 (citing Restatement (Second) of Conflict of Laws § 145 (Am. Law Inst. 1971)). In short, under this test, a court determines—and consequently applies the law of—the state with the most "significant relationship to the occurrence and the parties." Restatement (Second) of Conflict of Laws § 145.

Ms. Amsden resides in Texas, the product at issue was purchased in Texas, and the product was implanted in Texas. Accordingly, I **FIND** Texas has the most significant relationship to the occurrence and the parties, and I **FIND** Texas's substantive law—including its statutes of limitations—applies in this case.

### III.

To obtain summary judgment, the moving party must show that there is no genuine dispute as to any material fact and that the moving party is entitled to

judgment as a matter of law. Fed. R. Civ. P. 56(a). When considering a motion for summary judgment, the court will not "weigh the evidence and determine the truth of the matter." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, the court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986).

Although the court will view all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in his [or her] favor." *Anderson*, 477 U.S. at 256. Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or unsupported speculation, without more, are insufficient to preclude summary judgment. *See, e.g.*, *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987).

## IV.

To start, the plaintiff has abandoned her warranty claims, informing the court she "will not pursue causes of action based upon breach of warranty." Resp. 2. So to the extent Ethicon's Motion seeks summary judgment on warranty claims, it is

**DENIED as moot**. This leaves the plaintiff's non-warranty claims, all of which fall within the scope of section 16.003 of the Texas Civil Practices and Remedies Code.[1]

Section 16.003(a) mandates that all personal injury actions must be filed within two years after the alleged wrongful act causing the injury at issue occurred. *See Childs v. Haussecker*, 974 S.W.2d 31, 36 (Tex. 1998). This period may be tolled by the discovery rule, which tolls accrual "until a plaintiff knows or, through the exercise of reasonable care and diligence, 'should have known of the wrongful act and resulting injury.'" *Id.* at 37 (quoting *S.V. v. R.V.*, 933 S.W.2d 1, 4 (Tex. 1996)).

The plaintiff filed her Complaint [ECF No. 1] on March 22, 2012. According to Ethicon, Ms. Amsden's cause of action began to accrue on December 20, 2005, when "she was aware she was experiencing complications following her October 2005 surgery." Mem. Supp. Mot. 2 [ECF No. 66]. Alternatively, Ethicon argues that Ms. Amsden was aware that her mesh products had allegedly failed no later than November 12, 2008—the date of Ms. Amsden's second pelvic surgery. In support of these arguments, Ethicon offers the following: (1) on December 20, 2005, a nurse practitioner working for Dr. England "informed [Ms. Amsden] that mesh from the October 2005 surgery was exposed through her vaginal wall at the anterior incision line"; (2) on October 2, 2008, Ms. Amsden "returned to Dr. England . . . complaining that she could feel the mesh"; (3) on November 12, 2008, Ms. Amsden "underwent a second surgery with Dr. England because she believed the [mesh products] implanted

---

[1] Ethicon asserts that all of the plaintiff's claims fall within the scope of this statute. The plaintiff does not contest this.

during the October 2005 surgery had failed and cause her serious bodily injury." *Id.* at 4–5. But the court does not view the facts as characterized and interpreted by Ethicon. The court must view the facts in the light most favorable to the plaintiff. And when viewed in this light, the facts do not compel the outcome suggested by Ethicon.

Ethicon contends that Ms. Amsden's cause of action began to accrue on December 20, 2005—the date of her conversation with Dr. England's nurse practitioner. However, a reasonable juror could find that, for purposes of the discovery rule, Ms. Amsden did not know and should not have known of the wrongful act or resulting injury at that time. *See* Amsden Dep. 91:3–93:21 [ECF No. 68-1] (noting that she had no understanding that the stitch removed was related to her transvaginal mesh). Ethicon overemphasizes the importance of the discussion between Ms. Amsden and the nurse practitioner, during which the nurse practitioner mentioned mesh erosion as a potential complication of transvaginal mesh implants. Merely being informed of the potential complications of her October 2005 surgery did not necessarily present Ms. Amsden with knowledge sufficient to start the statute of limitations clock. In fact, it appears the nurse practitioner did not give Ms. Amsden any reason to believe that her issues were troubling or problematic. *Id.* at 91:23–92:18. Thus, genuine disputes regarding whether Ms. Amsden knew or should have known of the wrongful act or resulting injury at that time remain.

Ethicon's argument that the statute of limitations started to run sometime between December 2005 and the November 2008 surgery likewise fails. From

Ethicon's perspective, Ms. Amsden admitted she was aware the mesh products had eroded. But under Texas law, "a diligent plaintiff's mere suspicion or subjective belief that a causal connection exists between [the wrongful act] and [the] symptoms is, standing alone, insufficient to establish accrual as a matter of law." *Childs*, 974 S.W.2d at 43. Further, around this time, Ms. Amsden was also suffering from tissue granulation—a condition Dr. England did not definitively attribute to mesh erosion. England Dep. 133:20–137:6 [ECF No. 68-2]. Not even Ms. Amsden's physicians could conclude that her complications were related to the mesh products during the time period set out by Ethicon. Yet again, genuine disputes regarding whether Ms. Amsden knew or should have known of the wrongful act or resulting injury at that time remain.

Nor can I conclude the statute of limitations clock started to run after Ms. Amsden had her November 2008 surgery. While Ms. Amsden understood that there was a certain amount of mesh erosion at this time, neither she nor her doctor knew the erosion necessarily resulted from the mesh products. In fact, on several occasions, Dr. England told Ms. Amsden that her complications were caused by and the November 2008 surgery was necessary because of a failure of her own tissues, not the mesh implants. *See, e.g.,* England Dep. 143:5–144:24, 150:22–151:2. Thus, a reasonable juror could find that Ms. Amsden did not know nor should have known of the wrongful act and resulting injury even after the November 2008 surgery.

V.

At this stage, there are genuine disputes of material fact as to whether Ms. Amsden knew or should have known of the wrongful act and resulting injury before March 22, 2010. This is a question best left to the jury. *See Childs*, 974 S.W.2d at 44 ("Inquiries involving the discovery rule usually entail questions for the trier of fact."). So the statute of limitations issue—insofar as it relates to Ms. Amsden's non-warranty claims—cannot appropriately be resolved on a motion for summary judgment. And to the extent this issue relates to Ms. Amsden's now-abandoned warranty claims, the issue is moot. Accordingly, Ethicon's Motion for Summary Judgment [ECF No. 65] is **DENIED**.

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: May 25, 2016

_____
JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE